WALLOVER OIL CO., APPELLEE, *v.* OHIO WATER POLLUTION
CONTROL BOARD ET AL., APPELLANTS.

[Cite as Wallover Oil Co. v. Ohio Water Pollution Control
Bd. (1972), 32 Ohio St. 2d 233.]

(No. 72-190—Decided December 15, 1972.)

234

*Messrs. Evans, Gentithes & Meermans* and *Mr. Robert S. Meermans,* for appellee.

*Mr. William J. Brown,* attorney general, *Mrs. Maryann B. Gall* and *Mr. Maynard French Thomson,* for appellants.

O'NEILL, C. J.  A statute which purports to grant a tax exemption is strictly construed.  An applicant seeking such exemption must affirmatively establish his right thereto.  *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407. The court does not indulge in presumptions favoring a tax exemption.  *Goldman* v. *Bentley Post* (1952), 158 Ohio St. 205, 207.  A party seeking exemption has the burden of demonstrating that he meets the statutory qualifications for tax exemption.

R. C. 6111.31 provides:

"Appliances, equipment, machinery, and structures comprising all or a part of an industrial water pollution control facility as defined in Section 6111.01 of the Revised Code, and [1] *installed pursuant to the approval of the Water Pollution Control Board or any other governmental*

*agency having authority to approve the installation of industrial or other water pollution abatement or control facilities, and [2] which is initially placed in operation, or is initially capable of operation on or after December 31, 1965, shall be excepted from personal property taxes, franchise taxes and sales and use taxes * * *."* (Emphasis added.)

This statutory language requires that, in order to qualify "for an industrial water pollution control certificate," the applicant must demonstrate that its equipment was "installed pursuant to * * * approval."

Wallover relies upon a letter dated October 6, 1969, from the health commissioner of East Liverpool, Ohio, for meeting this requirement of prior approval. An examination of this exhibit, however, reveals that the East Liverpool inspection was not for the purpose of approving Wallover's installation of facilities. The letter recites that "the reason for this [health commissioner's] visit was to determine if The Wallover Oil Co. was discharging any pollution into any streams." Nothing more was said as to the purpose of the inspection, nor was *any language* contained elsewhere in the letter which indicated approval of any new installation for the purpose of cleaning oil. The commissioner merely concludes by saying that:

"We observed that the waste water comes partly from a boiler and partly from a settling tank. This water is discharged into a sanitary sewer and flows to the East Liverpool Sewage Treatment Plant where it is treated along with other sewage. At the time of our visit we did not see any oil in the waste water. It is our opinion * * * that The Wallover Oil Co. is satisfactorily disposing of its waste water and is not contributing to stream pollution."

The letter made no reference to and gave no approval for the installation of the equipment for which tax exemption is sought, described by Mr. Wallover in his testimony at the board hearing on April 14, 1970, as follows: "* * * the facility * * * a combination of storage tanks and various pieces of equipment and incidental equipment." No reference is made or approval given for the installation of what Mr. Wallover calls the storage facilities, the tanks, the cen-

trifuge, pressure filter, vacuum distillation unit, a collecting basin, baffled tank, landfill, a rather sophisticated burner, a proposed after burner and a proposed stainless steel scrubber and a boiler.

In addition to the required approval of an installation, to qualify for issuance of an industrial water pollution control certificate and tax exemption an applicant must demonstrate that its facility is "placed in operation" or "capable of operation." R. C. 6111.31. The record in the instant case indicates that the opposite is true. The relevant testimony of Wallover is as follows:

Counsel for Wallover:

"Q. What is the actual status of your facility now? Is it in operation or is it completed? * * *"

The president of Wallover:

"A. It is not complete. It is not operable except in a very limited basis at this point."

The president then went on to describe the additional equipment necessary to make the plant operational.

Appellee failed to meet its affirmative burden of demonstrating that it is entitled to the tax exemption provided under R. C. 6111.31 in two respects: (1) The record does not affirmatively show that Wallover's industrial water pollution control facility was "installed pursuant to the approval of the Water Pollution Control Board or any other governmental agency having authority to approve the installation of industrial or other water pollution abatement or control facilities"; (2) the record does not affirmatively demonstrate that Wallover's industrial water pollution control facility was "placed in operation" or was "capable of operation."

For the foregoing reasons, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

SCHNEIDER, HERBERT, CORRIGAN, STERN, LEACH and BROWN, JJ., concur.